# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT A. PERSON, ) | 1:10cv01482 DLB |
| ) | |
| ) | |
| ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, ) | SOCIAL SECURITY COMPLAINT |
| ) | |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| ) | |
| Defendant. ) | |
| ) | |

## BACKGROUND

Plaintiff Robert A. Person ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed his applications on December 8, 2006, alleging disability since May 21, 2005, due to HIV, hepatitis, diabetes and high blood pressure. AR 124-128, 129-131, 143-149.

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

After his applications were denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 72-73, 79, 100. ALJ Michael Kopicki held a hearing on January 8, 2009, and issued a decision denying benefits on May 18, 2009. AR 18-29, 30-71. The Appeals Council denied review on June 18, 2010. AR 1-5.

Hearing Testimony

ALJ Kopicki held a hearing on January 8, 2009, in Fresno, California. Plaintiff appeared with his attorney, Steven Gonzales. Vocational expert ("VE") Judith Najarian also appeared and testified. AR 30.

Plaintiff testified that he lives in an apartment with his brother. AR 33. He is divorced and has grown children. AR 35. Plaintiff's current source of income was general relief and food stamps. AR 34. Plaintiff was 51 years old at the time of the hearing. He was five feet, eight inches tall and weighed 125 pounds. AR 35.

Plaintiff completed the twelfth grade and did not have any vocational training. He was in the Army for a total of six years and received an honorable discharge. AR 35-36.

Plaintiff testified that he had not worked since June 2005. AR 37. He stopped working because the new owner of the trailer park where he as a maintenance man fired him. AR 36. Prior to that, he was a laborer at an apple processing plant. AR 37.

Plaintiff explained that he could not work anymore because he is HIV positive, which makes him constantly tired and unable to get out of bed. He said he spends twenty hours a day in bed. His diabetes also causes him to urinate every twenty minutes and his HIV medicine causes diarrhea. AR 41-42. Both HIV and diabetes make him tired. AR 44. Plaintiff was diagnosed with HIV in May 2005[2] after being admitted to Saint Agnes Hospital. The treatment notes reference delirium tremens, septic shock, malnutrition, chemical dependency and alcohol withdrawal. Plaintiff was also positive for meth. Plaintiff testified that he does not drink, so he does not understand why the notes say "alcohol withdrawal." AR 41-42.

---

[2] Treatment notes indicate that he was hospitalized in May 2006. AR 203 207.

2

Plaintiff takes two different kinds of insulin for his diabetes. He follows the instructions for taking his insulin, but it is hard to follow the recommended diet because he doesn't have the finances to buy the special foods he needs. AR 45.

The ALJ asked Plaintiff to respond to a note in the Veterans' Administration ("VA") treatment records dated August 2008, which state that Plaintiff was not following his diet because he "didn't care about the diabetes." AR 45. Plaintiff explained that he did care about his diabetes and meant that he did not have the resources for the proper food or to ride to the hospital on the bus. He said that he does care about his diabetes, as evidenced by his treatment record. AR 45. He checks his blood sugar two to four times per day. AR 46.

Plaintiff also has hepatitis C and treatment is on "standby." AR 46. An ultrasound of his liver revealed gallstones, which need to be addressed. AR 46.

An x-ray last year diagnosed emphysema, but he does not receive treatment for it. AR 47. The emphysema causes him to get short of breath and have a coughing spell when he walks and lifts anything. Plaintiff is still smoking, though he is trying hard to quit. AR 47. He smokes a "couple" cigarettes a day. AR 67. The ALJ asked Plaintiff about a note in the treatment record indicating that Plaintiff was offered, but refused, smoking cessation classes. Plaintiff testified that he did get the "patches and everything." He states that he does not know why the record says he didn't go, because he did go after having Dr. Wong set it up. AR 47-48.

Plaintiff also testified that he is depressed and takes medication. AR 49.

The ALJ also wanted to allow Plaintiff an opportunity to respond to issues of drug use. Plaintiff testified that he used methamphetamine until 2006, when he was "diagnosed with all this" and was "scared to death." AR 49. The ALJ read Plaintiff a treatment note from October 2006 that indicated that Plaintiff continued to use meth when he had money to buy it. The ALJ also read a note from June 20, 2007, that indicates "ongoing use of meth, not willing to give it up as he had three strikes against him already." AR 49-50. Plaintiff explained that he no longer sees things this way because he thinks he is going to die soon and doesn't do drugs anymore. AR 50. He states that he made those comments to be a "smart ass" and that he was joking with the doctors because they were joking about his drug use. AR 50.

1       When asked directly, Plaintiff didn't know when he last used meth, but said it was in
2   2007.  He couldn't remember when in 2007 because his memory was not good.  AR 51.
3       Plaintiff testified that he stays in bed all day.  He gets the mail and comes back.  Plaintiff
4   does the shopping when he gets his food stamps and his brother takes him to the store.  He can't
5   do all the shopping at once, however.  AR 52.  Plaintiff has an expired driver's license and does
6   not drive.  He does laundry once a month.  He watches television about eight or nine hours a day
7   and sleeps for the rest of the day.  AR 53.
8       Plaintiff thought that he could stand for thirty minutes to one hour in an eight hour day.
9   He said that he cannot walk because he walked to the neighborhood store six blocks away and
10  was out of breath and had issues with his legs.  He thought that he could lift ten pounds, at most,
11  and only if he didn't have to carry it anywhere.  AR 55.  He could sit for two or three hours out of
12  an eight hour day, but would need to get up often to use the restroom.  AR 59.
13      When questioned by his attorney, Plaintiff testified that he has talked to his doctors in the
14  past about returning to work but in 2007, Dr. Tayloe said he could not work.  AR 56-57.  Dr.
15  Tayloe also certified that Plaintiff could not work for the General Relief program in September
16  2008 and in connection with child support proceedings against him.  AR 58-59.
17      For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age,
18  education and work experience.  This person could lift and/or carry twenty pounds occasionally,
19  ten pounds frequently, stand and/or walk for six hours in an eight hour day and sit for six hours
20  in an eight hour day.  This person should avoid concentrated exposure to fumes, gases or odors.
21  The VE testified that this person could not perform Plaintiff's past work but could perform light
22  unskilled work, with a four percent reduction for the environmental restriction.    AR 66-67.
23      For the second hypothetical, the ALJ asked the VE to assume that this person could rarely
24  lift more than ten pounds and rarely twist, stoop, bend, crouch and climb stairs.  This person
25  could never climb ladders and could sit for less than two hours in an eight hour day and
26  stand/walk for less than two hours in an eight hour day.  This person would require unscheduled
27  breaks during the day, in addition to three usual breaks, and his attention and concentration
28

would frequently be affected by pain or other symptoms. This person would also miss more than four days of work per month. The VE testified that this person could not work. AR 67-68.

For the final hypothetical, the ALJ asked the VE to assume that this person could lift ten pounds, but not carry it, stand no more than thirty minutes, walk one block and sit for two to three hours total in an eight hour day. This person would also be subject to various interruptions due to unscheduled bathroom breaks. The VE testified that this person could not work. AR 68-69.

Medical Record

Plaintiff was admitted to the hospital on May 21, 2006, with an altered level of consciousness, fever and a history of intravenous drug use. AR 207. A chest x-ray taken upon admission revealed mild pulmonary vascular congestion. AR 240. Plaintiff became combative and agitated, consistent with alcohol withdrawal. His blood screen was positive for HIV and hepatitis C. An ECG was negative for endocarditis. AR 206. Notes from May 23, 2006, indicate that Plaintiff was diagnosed with alcohol withdrawal, methamphetamine withdrawal, HIV, hepatitis C, liver disease, hypotension and uncontrolled diabetes. AR 205.

Plaintiff was discharged on May 29, 2006, with diagnoses of type II diabetes, delirium tremens, septic shock, malnutrition, chronic hepatitis C and chemical dependency. His HIV test required follow-up. AR 203.

A chest x-ray taken on May 30, 2006, revealed interval clearance of the vascular congestion, large effusions and most likely congestive failure since the May 22, 2006, x-ray. AR 200.

Lumbar spine x-rays taken on September 18, 2006, revealed no abnormalities. AR 356.

On October 30, 2006, Plaintiff told a social worker at the VA that he continued to use methamphetamine whenever he has money to buy it. He indicated that he was not using as much as last year because he couldn't afford it and it was "not the same high." When asked if he wanted to quit, he said he was "going to die anyways." Plaintiff reported being depressed but stated that he did not want a prescription, "unless the doctor was going to prescribe meth."

Plaintiff also reported that he was not taking insulin as directed.  Plaintiff presented as angry and depressed.  AR 353-354.

On November 1, 2006, Plaintiff was seen at the VA for a hepatitis treatment evaluation.  He was actively using IV amphetamine and his diabetes was poorly controlled.  Plaintiff was not a candidate for treatment.  AR 343-347.

Plaintiff attended a smoking cessation workshop on November 3, 2006.  He set a date for quitting and was given "appropriate medication."  AR 342-343.

Plaintiff received a hepatitis B vaccine on November 6, 2006.  He was "very emaciated."  AR 338.  His health problems were listed as nicotine dependence, chronic hepatitis C, "overdose," acute gastritis, diabetes type II, substance abuse and HIV.  AR 338-339.

Notes from the Diabetes Clinic dated November 7, 2006, indicate that Plaintiff's diabetes was poorly managed and that his weight was fluctuating.  AR 335-336.

Plaintiff saw Don R. Tayloe, M.D., on November 15, 2006.  Plaintiff was given the option of starting HIV medications and was receptive to the idea.  AR 333.

Plaintiff was seen in the VA Infectious Disease Clinic on December 4, 2006.  He reported feeling much better and gaining weight since starting insulin.  Plaintiff drank two beers the day before and was using "IV amphetamine" once a week.  Dr. Tayloe advised Plaintiff to stop drinking alcohol.  AR 327.

On January 16, 2007, Plaintiff was seen in Infectious Disease and reported that he had not had his labs done.  He was still using drugs and could not be evaluated for "Hcvg rx."  AR 325.

Plaintiff saw Dr. Tayloe on February 5, 2007.  He complained of occasional diarrhea and reported that he was still on street drugs.  Plaintiff was seen in the "HCV" Clinic but could not start treatment since he was still using drugs.  Dr. Tayloe instructed Plaintiff to stop using all drugs and alcohol and to take his HIV medications on time and with food to avoid resistance.  AR 322.

Plaintiff returned to Dr. Tayloe on February 21, 2007, and reported that his diarrhea was controlled by medication. He was instructed to stop smoking and was given an antibiotic for a cough. AR 319. Chest x-rays taken the same day revealed emphysema, with no acute abnormality. AR 355-356.

Plaintiff began treatment in the Diabetes Clinic at the VA on March 6, 2007. He reported that he could not afford to eat three meals a day and that he skips his morning shot about three times a week because he sleeps through it. Plaintiff reported that he eats and sleeps all day and night. He has a thirty year history of smoking and uses alcohol occasionally. The provider had a long discussion with Plaintiff about compliance and he agreed to be more compliant. AR 311.

Plaintiff saw Kiran Toor, M.D., at the VA on March 27, 2007. His blood sugars were not well controlled and he was unable to maintain a regular dietary regimen because of social issues. He missed morning doses of insulin once or twice a week. Plaintiff was started on different insulin. AR 296-297.

On April 13, 2007, State Agency physician C.A. Fracchia, M.D., completed a Physical Residual Functional Capacity Assessment. Dr. Fracchia opined that Plaintiff could lift twenty pounds occasionally, ten pounds frequently, stand and/or walk for about six hours and sit for about six hours. He had no further limitations. AR 261-265.

On April 25, 2007, State Agency physician Evangeline Murillo, M.D., completed a Psychiatric Review Technique form. Dr. Murillo opined that Plaintiff did not have a severe mental impairment. AR 266-279.

Plaintiff returned to the VA on May 16, 2007, and reported constant left shoulder pain with numbness and tingling in the left arm and fingers, as well as numbness in the middle two toes of his left foot. Plaintiff was not taking pain medication and was doing well on his HIV medication. Examination revealed full range of motion in the left shoulder, no point tenderness and normal sensation. Plaintiff also complained of depression and was started on an antidepressant. AR 292-293.

Cervical spine x-rays dated May 16, 2007, revealed mild degenerative changes at C4-C5. AR 355.

  Plaintiff returned to the VA on June 15, 2007, for his initial visit to the Mental Health Clinic. He reported ongoing use of meth and stated that he was not willing to give it up because he has three strikes against him already. Plaintiff indicated that he was hopeless and had felt this way since childhood. His clothing was soiled and his hygiene was poor. Plaintiff's mood was hopeless and his affect was flat and sad. Plaintiff did not know why he was at the clinic and ended the meeting early. He was offered mental health assistance, but declined. AR 290.

  Treatment notes from the VA dated June 20, 2007, state, "social situation evidently unchanged so his lifestyle is still an adverse factor in his [diabetes] control." AR 290.

  Treatment notes from July 31, 2007, indicate that his diabetes was poorly controlled. AR 396.

  On August 6, 2007, State Agency physician Archimedes Garcia, M.D., completed a Psychiatric Review Technique form. He opined that there was insufficient evidence to make a medical determination. He also noted that Plaintiff was continuing to use drugs and had no interest in stopping. Plaintiff also had no interest in receiving psychiatric services. AR 377-385.

  Plaintiff was seen at the VA on August 23, 2007, for a boil on his upper lip. He was smoking but denied respiratory symptoms. Plaintiff was given medication and insulin because he failed to take his usual afternoon dose. He was also asked to stop smoking. AR 391.

  On September 6, 2007, Dr. Tayloe completed a Physical Residual Functional Capacity Questionnaire. Dr. Tayloe first saw Plaintiff in August 2006 and has been seeing him every two to three months. He last saw Plaintiff in August 2007. Plaintiff's diagnoses were HIV, hepatitis C, diabetes, drug use and emphysema. His prognosis was guarded. As clinical findings in support of his diagnoses, Dr. Tayloe listed positive HIV and hepatitis C tests, high blood sugar, degenerative disc disease of the cervical spine and emphysema based on a chest x-ray. Plaintiff was not a malingerer, though his depression contributed to the severity of his symptoms and limitations. AR 441.

  During an eight hour day, Dr. Tayloe believed that Plaintiff's pain/symptoms would frequently interfere with his attention and concentration and that he would be incapable of even a low stress job. He could sit for 45 minutes at a time, for less than two hours total, and stand for

ten minutes at a time, for less than two hours total.  Plaintiff would require unscheduled breaks and could rarely lift less than ten pounds.  He could never climb ladders and could rarely twist, stoop, bend, crouch and climb stairs.  Plaintiff also had moderate limitations in repetitive reaching, handling or fingering.  Dr. Tayloe believed that Plaintiff would likely be absent for more than four days per month.  He concluded by explaining that Plaintiff is "very ill with multiple serious problems." AR 442-444.

An ultrasound of Plaintiff's liver performed on August 20, 2008, revealed cholelithiasis and hepatomegaly.  AR 403.

Plaintiff saw Jian Huang, M.D., on August 28, 2008, for follow-up.  He stated that he did not care about his diabetes and was not following his diet.  Plaintiff had lost weight since his last visit and reported fatigue.  He was still smoking and the patch was not working, though he has cut down to less than one pack a day.  He was feeling down due to medication problems. Plaintiff stated that he was seen at Mental Health in the past and was not satisfied and therefore did not follow-up.  Dr. Huang diagnosed poorly controlled diabetes and emphasized diet again. He also diagnosed mood disorder, though Plaintiff declined referral to Mental Health.  Plaintiff also declined assistance with smoking counseling.  Plaintiff was not ready to quit but "agreeable with cutting down." AR 434-435

Plaintiff was seen for a surgical consult on September 18, 2008.  Jaime Arana, M.D., believed that there was no indication for removal of Plaintiff's gallbladder and asymptomatic gallstones.  AR 428.

<u>ALJ's Findings</u>

The ALJ determined that Plaintiff had the severe impairments of HIV and diabetes mellitus.  AR 23.  Despite these impairments, he retained the residual functional capacity ("RFC") to carry twenty pounds occasionally, ten pounds frequently, and sit, stand and walk for six hours.  Plaintiff had to avoid concentrated exposure to fumes, gases or odors.  AR 25.  With this RFC, the ALJ determined that Plaintiff could not perform his past relevant work but could perform a significant number of jobs in the national economy.  AR 27-28.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20

1  C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f).  Applying this process in this case, the ALJ found
2  that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his
3  disability; (2) has an impairment or a combination of impairments that is considered "severe"
4  (HIV and diabetes mellitus) based on the requirements in the Regulations (20 CFR §§
5  416.920(b)); (3) does not have an impairment or combination of impairments which meets or
6  equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot
7  perform his past relevant work; (5) but can perform a significant number of jobs in the national
8  economy.  AR 23-28.
9        Here, Plaintiff argues that the ALJ improperly rejected Dr. Tayloe's opinion.

## DISCUSSION

Plaintiff argues that although the ALJ discussed Dr. Tayloe's physical assessment, he did not set forth legally sufficient reasons for rejecting it.

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995).  Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record.  *Lester*, 81 F.3d at 830.  Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record.  *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)).  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989).  The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct.  *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988).  Therefore, a treating physician's opinion must be given controlling weight if it is well-supported and not inconsistent with the other substantial evidence in the record.  *Lingenfelter v. Astrue*, 504 F.3d 1028 (9th Cir. 2007).

The record in this action included two opinions relating to Plaintiff's physical capabilities. In April 2007, State Agency physician Fracchia opined that Plaintiff could lift twenty pounds occasionally, ten pounds frequently, and stand, sit and walk for six hours each. AR 261-265. Dr. Tayloe, Plaintiff's treating source, described limitations in September 2007 that would prevent work. AR 441-444.

Ultimately, the ALJ adopted Dr. Fracchia's opinion with an additional limitation to avoid concentrated exposure to gases, fumes, etc. The ALJ found that this opinion was consistent with the medical findings. AR 25.

In rejecting Dr. Tayloe's opinion, the ALJ first noted that it was not wholly supported by his treatment notes. For example, although Dr. Tayloe cited diarrhea, coughing, cellulitis, depression, left shoulder pain and emphysema on the questionnaire, these symptoms "were not significantly recorded in the treatment notes of record." AR 27. Indeed, although there is a notation of "occasional diarrhea," Plaintiff told Dr. Tayloe during a follow-up visit that it was controlled by medication. AR 322. Similarly, in November 2006, Plaintiff was seen with "resolving" cellulitis. AR 347. There was also an instance in the record where Plaintiff was treated for a boil on his lip, though there is no indication that the prescribed antibiotic did not alleviate the issue. AR 391.

As for Plaintiff's depression, he took an antidepressant but refused follow-up treatment from the Mental Health Clinic because he was not satisfied. AR 434-435. The record also contains one complaint of constant left shoulder pain, but Plaintiff was not taking any pain medication and examination revealed full range of motion in the left shoulder, no point tenderness and normal sensation. AR 292. Finally, although a chest x-ray taken in February 2007 showed emphysema with no acute abnormalities, the records did not contain evidence of respiratory problems. In fact, in August 2007, Plaintiff specifically denied respiratory symptoms. AR 391. A lack of supporting clinical findings, such as those cited by the ALJ, is a valid reason for rejecting a treating physician's opinion. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Next, the ALJ explains that although Dr. Tayloe lists degenerative disc disease of the cervical spine as a clinical finding, a May 2007 x-ray revealed only mild degenerative changes at C4-5. AR 355. There were also no clinical findings to substantiate such severe restrictions based on degenerative disc disease. Similarly, although Dr. Tayloe cites hepatitis C, there is no indication that the impairment is causing any symptoms. AR 27. *Magallenes,* 881 F.2d at 751.

Plaintiff contends that the ALJ is improperly substituting his lay opinion for that of a medical professional. Plaintiff's argument is based on his assumption that the ALJ "concedes that the opinion of Dr. Tayloe is supported by his medical notes," yet "finds fault with Dr. Tayloe's interpretation of that opinion." Opening Brief, at 7. The ALJ does not, however, concede that Dr. Tayloe's opinion is supported by either his own treatment notes or the remaining notes in the record. His analysis is therefore not based on his disagreement with a well-supported opinion, but rather is based on the unsupported nature of his opinion in the first instance.

The ALJ also questions Dr. Tayloe's September 2007 assessment because it omits any discussion of the impact of Plaintiff's substance abuse, which was ongoing during much of Dr. Tayloe's treatment. When Plaintiff was admitted to the hospital in May 2006, he had a history of drug use. In October 2006, he told a social worker that he continued to use methamphetamine when he had money to buy it. AR 353. In November 2006, he was actively using methamphetamine. AR 343-347. In December 2006, he told Dr. Tayloe that he was using IV methamphetamine once a week. AR 327. In January and February 2007, he was still using drugs and therefore could not start hepatitis treatment. AR 322, 325. In June 2007, just three months before Dr. Tayloe completed his questionnaire, Plaintiff reported ongoing use of methamphetamine and indicated that he was not willing to give it up. AR 290. His case manager at that time concluded that his methamphetamine dependence was interfering with his medical and psychiatric care. AR 290.

Based on Plaintiff's continual use of drugs and his refusal to stop, the ALJ properly questioned the validity of Dr. Tayloe's assessment because it failed to acknowledge the impact of

Plaintiff's drug use.  This is especially appropriate given the explicit finding in June 2007 that Plaintiff's drug use was interfering with his medical treatment.  AR 290.

Finally, the ALJ concludes that Dr. Tayloe's opinion was "largely" based on Plaintiff's subjective complaints.  AR 27.  An ALJ is entitled to reject the treating physician's opinion because it was based on the claimant's discredited subjective complaints.  *Thomas v. Barnhart,* 278 F.3d 948, 957 (9th Cir. 2002); *Fair v. Bowen*, 885 F.2d 597, 605 (9th 1989).  Here, the ALJ found Plaintiff not entirely credible and he does not challenge this finding.

The Court concludes that the ALJ set forth specific and legitimate reasons for rejecting Dr. Tayloe's opinion.  Although the ALJ ultimately adopted the State Agency physician's opinion, there was substantial evidence to support his conclusion.  An ALJ can reject the opinion of a treating source in favor of a nonexamining medical advisor so long as the nonexamining opinion is not the sole factor for the rejection.  *Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir.1989); *Andrews,* 53 F.3d at 1043; *Roberts v. Shalala,* 66 F.3d 179 (9th Cir.1995).  As explained above, the ALJ set forth numerous reasons for rejecting Dr. Tayloe's that were independent of Dr. Fracchia's opinion.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff Robert A. Person.

IT IS SO ORDERED.

Dated:   **June 3, 2011**                    /s/ **Dennis L. Beck**
                                             UNITED STATES MAGISTRATE JUDGE